UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMAN LONGEVITY, INC., <br> Plaintiff, <br> v. <br> J. CRAIG VENTER INSTITUTE, INC. and DOES 1-100, inclusive, <br> Defendant. | Case No.: 18cv1656-WQH-LL <br><br> **ORDER** |

HAYES, Judge:

The matter before the Court is Plaintiff Human Longevity, Inc.'s Motion to Disqualify Counsel. (ECF No. 8).

**I. BACKGROUND**

On July 20, 2018, Plaintiff Human Longevity, Inc. (HLI) initiated this action by filing a Complaint for Damages and Injunctive Relief against Defendant J. Craig Venter Institute, Inc. (JCVI) and doe defendants. (ECF No. 1).

On July 27, 2018, HLI filed a Motion to Disqualify Cooley LLP, Attorneys of Record for Defendant. (ECF No. 8). HLI asserts that Cooley LLP represented HLI in a trade secrets matter against a former HLI employee in state court less than four months ago. HLI contends that Cooley LLP "cannot represent HLI in one matter involving trade

secrets and then represent an opponent of HLI in trade secrets litigation in a period of less than six months." *Id.* at 2.

On August 3, 2018, the Court denied HLI's motion for a temporary restraining order and HLI's motion for an order to show cause why a preliminary injunction should not be issued. (ECF Nos. 6, 14).

On August 21, 2018, JCVI filed a Response in Opposition to HLI's Motion to Disqualify supported by declarations and exhibits. (ECF No. 22). On August 28, 2018, HLI filed a Reply including evidentiary objections to JCVI's supporting declarations and exhibits. (ECF No. 24). On August 30, 2018, JCVI filed a Notice of Intent to Respond to HLI's evidentiary objections. (ECF No. 25). On August 31, 2018, HLI filed an Objection to JCVI's Notice of Intent to Respond to HLI's evidentiary objections. (ECF No. 27). On September 4, 2018, JCVI filed a Response to the Reply regarding HLI's evidentiary objections. (ECF No. 30).

On October 15, 2018, JCVI filed a Notice of Ruling (ECF No. 33), and a Motion to File Documents Under Seal (ECF No. 34). On October 31, 2018, HLI filed a Motion to Strike JCVI's Notice of Ruling and JCVI's Motion to File Documents Under Seal (ECF No. 38), and a Response to JCVI's Motion to File Documents Under Seal (ECF No. 39).

## II.    ALLEGATIONS OF THE COMPLAINT

As part of his employment with HLI, J. Craig Venter, former HLI Chief Executive Officer and Executive Chairman reporting to the HLI Board, allegedly signed a Proprietary Information and Inventions Agreement (PIIA). (ECF No. 1 at 2, 4, 8–9). In the PIIA, Venter allegedly agreed that all inventions, "along with all other confidential, 'business, technical, and financial information (including, without limitation, the identity of and information relating to customers or employees)' developed, learned or obtained by Venter during his employment, were considered 'Proprietary Information' and that he would not disclose such information." *Id.* at 4. The Complaint alleges, "Venter agreed to return to HLI all items containing or embodying Proprietary Information" and agreed that he would not "encourage or solicit any employee of HLI to leave HLI for any reason" for one year

after the term of his employment. *Id.* at 4–5. Venter has allegedly also served as the Chairman and Executive Officer of JCVI and a member of the JCVI Board of Trustees at all times.

Venter was allegedly terminated from employment with HLI in May of 2018. *Id.* at 8–9. Following the termination, Venter allegedly "abruptly left the HLI corporate offices with his HLI-owned computer" and "immediately began using the HLI computer and server to communicate to the public [and] solicit HLI investors and employees" in order to "compete directly with HLI." *Id.* at 9. "HLI is informed, believes and based thereon alleges that Defendant received and is using HLI's Trade Secrets in an attempt to set up a business to directly compete with HLI." *Id.* at 9–10.

HLI brings the following causes of action against JCVI: (1) misappropriation of trade secrets, 18 U.S.C. § 1836; (2) conversion; (3) tortious interference with contract; (4) tortious interference with prospective economic advantage; and (4) unfair business practices. *Id.* at 11–16.

### III. CONTENTIONS OF THE PARTIES

HLI seeks an order disqualifying Cooley LLP as counsel of record for JCVI, due to a conflict of interest. HLI contends that Cooley litigators represented HLI in a prior matter against former HLI employee Tom Wamberg in a substantially related trade secrets matter (the Wamberg Matter) less than a month before becoming adverse to HLI in this matter. HLI asserts that this matter involves the protection of HLI's proprietary and trade secret information against JCVI in the same manner as the Wamberg Matter. HLI asserts that Cooley obtained confidential information in the Wamberg Matter regarding HLI's business plans, financial condition, valuation and other trade secrets that Cooley will use against HLI in this matter. HLI asserts that this matter involves many of the same people and HLI policies, procedures, and proprietary and trade secret information that was relevant to the Wamberg Matter. HLI asserts that Cooley has actual and presumptive knowledge of confidential information from the Wamberg Matter, and that the information is material to this matter.

1  JCVI asserts that no conflict exists. JCVI contends that disqualification is unwarranted because the motion fails to identify the trade secrets, policies and practices, or other confidential information that HLI believes Cooley actually possesses. JCVI contends that the Wamberg Matter is not substantially related to this matter. JCVI asserts that Cooley's representation in the Wamberg Matter was short lived and factually unrelated to this matter. JCVI asserts that no substantial relationship exists between the Wamberg Matter and this matter because the parties, the time frame, the conduct, and the subject matter are different.

## IV. SUBSTANTIVE LAW

Under local rules, federal courts in the Southern District of California apply California law to motions to disqualify counsel. *See* S.D. Cal. Civ. R. 83.4(b) ("[A]ny attorney permitted to practice in this court must be familiar with and comply with the standards of professional conduct required of members of the State Bar of California, which are now adopted as standards of professional conduct of this court."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("By virtue of the district court's local rules, California law controls whether an ethical violation occurred.").

Courts consider the attorney's duty of confidentiality when assessing potential conflicts of interest based on successive representation of clients with potentially adverse interests. *Flatt v. Superior Court*, 885 P.2d 950, 954 (Cal. 1994). Disqualification is appropriate if "the targeted attorney (1) has actual knowledge of material confidential information or (2) is presumed to have acquired confidential information because of the relationship between the prior representation and the current representation." *Faughn v. Perez*, 51 Cal. Rptr. 3d 692, 699–700 (Cal. Ct. App. 2006).

Disqualification is unwarranted when an attorney obtained actual knowledge of the former client's confidential information from the present client, and the present client obtained the information from employment with the former client. *See Neal v. HealthNet, Inc.*, 123 Cal. Rptr. 2d 202, 212 (Cal. Ct. App. 2002) (observing cases denying disqualification of attorneys representing former in-house counsel, former personnel

officer, or former employee, against former employers, based on client possession of employer confidential information); *see also Skyy Spirits, LLC v. Rubyy, LLC*, No. C-09-00646WHA, 2009 WL 3762418, at *2 (N.D. Cal. Nov. 9, 2009) ("Any counsel, not just Attorney Kinnear, would have access to Skyy's information regarding the value of its own trademarks.").

Short of showing actual knowledge, if "a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a 'substantial relationship' between the subjects of the antecedent and current representations." *Flatt*, 885 P.2d at 954; *see also Celebrity Chefs Tour, LLC v. Macy's, Inc.*, No. 13-cv-2714JLS(KSC), 2014 WL 12160744, at *3 (S.D. Cal. Jan. 23, 2014) ("[T]he former client bears the burden of demonstrating that a 'substantial relationship' exists between the prior and current representations."). The substantial relationship test balances "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *People v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 377–78 (Cal. 1999).

The substantial relationship test requires courts to compare the factual and legal issues in each case, and the extent of the attorney's involvement in each case.[1] *Farris v. Fireman's Fund Ins. Co.*, 14 Cal. Rptr. 3d 618, 622 (Cal. Ct. App. 2004) (noting the substantial relationship test examines "the nature and extent of the attorney's involvement" and "the factual and legal issues involved in the representations"); *see also Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 81 Cal. Rptr. 2d 425, 432 (Cal. Ct. App. 1999) (observing that "substantial relationship" considerations include "the time spent by

---

[1] The parties do not raise, and the Court does not address, variations of the "substantial relationship" test. *See Faughn*, 51 Cal. Rptr. 3d at 700 (modifying the test when "the former attorney-client relationship was peripheral or attenuated" as opposed to when "the attorney was involved personally and directly").

the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy")). Evidence of a substantial relationship must support "a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues.'" *Khani v. Ford Motor Co.*, 155 Cal. Rptr. 3d 532, 535 (Cal. Ct. App. 2013).

Overlapping causes of action or relevant facts between the former and present matters, without more, do not establish a substantial relationship. *See id.* at 536 (declining to disqualify upon evidence the former and present matters "involved claims under the same statute"); *see also TWiT, LLC v. Twitter, Inc.*, No. 18-cv-00341-JSC, 2018 WL 2470942, at *5 (N.D. Cal. June 1, 2018) (declining to disqualify because the fact "[t]hat TWiT utilizes video and audio streaming is . . . relevant to both matters (indeed, nearly any matter in which TWiT is a party)").

General information about a former client's "overall structure and practices," including the former client's "litigation philosophy" or "key decision makers," is relevant to showing a substantial relationship only if that information is "directly in issue or of critical importance" in the present matter. *Farris*, 14 Cal. Rptr. 3d at 623; *see also Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Labs., Inc.*, No. 1:09-cv-0914OWW-SKO, 2010 WL 2510999, at *3 (E.D. Cal June 17, 2010) ("[A] former client's general litigation or settlement strategy is not sufficient to disqualify an attorney from an adverse successive representation.") (citations omitted). Conclusory statements are insufficient to demonstrate the relevance and materiality of confidential information for purposes of showing a substantial relationship. *See Khani*, 155 Cal. Rptr. 3d at 536.

## V.   DISCUSSION

HLI provides a declaration by HLI's General Counsel, Ruben Gutierrez, stating that HLI "retained Cooley to represent it in the Wamberg case" on October 4, 2017, and that Michael Attanasio, Blake Zollar, and Heather Speers, "all attorneys in Cooley's San Diego

Office, were assigned to handle the Wamberg case." (ECF No. 8-3 ¶¶ 13–14). Gutierrez states that the Wamberg Matter involved allegations that a former HLI employee and the employee's new company "misappropriated HLI's trade secrets, including but not limited, to [HLI's] pricing lists, training materials, business plans, insurance procedures, business vendors, client contacts, and sales strategies." *Id.* ¶¶ 9, 15.

Guterriez states that during the Wamberg Matter, "Cooley drafted discovery requests, analyzed discovery responses, prepared a detailed meet and confer letter regarding discovery issues, and strategized regarding future handling of the matter to ensure the protection of HLI's Trade Secrets." *Id.* ¶ 18. Gutierrez states, "To properly represent HLI, prosecute the matter, and evaluate the merits" of the Wamberg Matter, "Cooley was required to educate itself about HLI's business, proprietary information, and trade secrets, the HLI PIIA, HLI's confidential training materials, business, plans, sales, strategies, pricing lists, and financial condition." *Id.* ¶ 16.

Gutierrez states that "Cooley was further required to consult with and learn HLI's litigation and settlement strategies." *Id.* ¶ 18. Gutierrez states that "Cooley strategized and communicated directly with me about HLI confidential information in my position as HLI's general counsel," and that "Cooley now is working against me in this trade secret action." *Id.* ¶ 19. Gutierrez states that "the Wamberg case was resolved on March 8, 2018," and that "Cooley continued representing HLI in the Wamberg matter well into May 2018, managing several 'wrap up' issues, including filing a form . . . seeking to recoup jury's fees," which was denied on May 15, 2018. *Id.* ¶ 21. Gutierrez states that "Venter hired Cooley on June 1, 2018 related to a separate dispute averse to HLI." *Id.* ¶ 31.

HLI also provides a declaration by HLI's attorney in this action against JCVI, J. Patrick Allen, who states that this case "will include many of the same people, HLI policies and procedures, and proprietary and trade secret information that Cooley obtained and reviewed in prosecuting the Wamberg matter on behalf of HLI." *Id.* Allen states that "Cooley attorney for HLI, Blake Zollar, drafted a seven (7) page meet and confer letter to opposing counsel in the Wamberg litigation," which "requested that counsel for the

Wamberg defendants identify additional potential witnesses, and included references to several individuals who were named in the hundreds of documents produced by the Wamberg defendants." *Id.* ¶ 16.

Allen also states that the laptop allegedly owned by HLI and misappropriated by JCVI and Venter "contains multiple documents that Cooley's clients (JCVI and Venter) misappropriated and refuse to return to HLI, and which are specifically referenced on lists within Cooley's possession that HLI alleged were misappropriated by the Wamberg defendants." (ECF No. 8-6 ¶ 12). Allen states, "Thus, HLI's case against Cooley-represented JCVI will include evidence and argument about HLI's proprietary information and trade secrets, and the requirements of the PIIA." *Id.*

JCVI provides a declaration from Cooley attorney Blake Zollar, stating that the defendant in the Wamberg Matter was employed as HLI's "Head of Insurance," whose role "was to sell HLI's products to various life insurance industry clients." (ECF No. 22-5 ¶ 16).[2] Zollar states that the alleged trade secrets in the Wamberg Matter "were HLI's marketing materials such as presentation slides and informational sheets." *Id.* ¶ 17. Zollar states the complaint in the Wamberg Matter alleges "that departing HLI employees downloaded hundreds of HLI's files to their personal Google drives, including 'pricing lists for various life insurance clients, internal presentations, internal documents regarding development programs, information regarding HLI products, brand strategy documents, and sales training documents.'" *Id.*

JCVI provides a declaration from Cooley attorney Michael Attanasio stating that a law firm other than Cooley "filed the complaint, sought and obtained a TRO, sought and obtained a preliminary injunction, and propounded discovery on behalf of HLI—all before Cooley was brought into the [Wamberg Matter]." (ECF No. 22-1 ¶ 5). JCVI provides a declaration from Cooley attorney Heather Speers, who states that "[n]early all of the

---

[2] The Court does not address HLI's evidentiary objections, which do not affect the outcome of this Motion. (ECF Nos. 24–25, 27, 30).

documents that I reviewed were produced by the defendants in the Warnberg Matter . . . in response to the discovery requests served by HLI's prior counsel," and that "I recall that the documents primarily comprised Mr. Wamberg's emails and marketing materials for Warnberg Genomic Advisors." (ECF No. 22-8 ¶ 3).

Attanasio, Zollar, and Speers state that in the Wamberg Matter, no Cooley lawyers obtained any HLI confidential information relevant to HLI's lawsuit against JCVI. (ECF No. 22-1 ¶¶ 3–4; ECF No. 22-5 ¶ 15; ECF No. 22-8 ¶ 4). Zollar and Speers state that Cooley did not propound discovery requests on the defendants or respond to discovery on HLI's behalf in the Wamberg Matter, because the defendants served no discovery requests on HLI. (ECF No. 22-5 ¶ 6; ECF No. 22-8 ¶ 3).

Zollar states that Cooley's work on the Wamberg Matter was limited partly due to unique circumstances of settlement. (ECF No. 22-5 ¶ 7). Zollar states that "Wamberg was no longer represented by counsel," that "it appeared that Wamberg did not intend to find new counsel or actively defend himself in the Wamberg Matter," and that "[i]t also appeared that Wamberg did not have any funds with which to pay damages, if any." *Id.* Zollar states that "[b]ased on these specific circumstances, I provided advice to HLI regarding settlement strategies that were particular to the unique position of the Wamberg Matter." *Id.* Zollar states that "Cooley also drafted the settlement agreement," and that Zollar was "not involved in any of the settlement discussions with Wamberg." *Id.*

Attanasio states that "Cooley billed a total of only 93.4 hours to HLI" for the Wamberg Matter. (ECF No. 22-1 ¶ 4). Zollar states, "I was the primary associate involved in" the Wamberg Matter, and that on August 17, 2018 Zollar left "Cooley to start my own law firm, a transition that I have been planning for many months." (ECF No. 22-5 ¶ 20). Attanasio states, "As the responsible partner, I generally oversaw the team's work for HLI," and that "I was included in, or apprised of, the team's communications with HLI, but . . . not involved in the case on a day-to-day basis." (ECF No. 22-1 ¶ 4).

JCVI provides a declaration by Steven Strauss, the Cooley lawyer representing JCVI against HLI in this matter, stating that that "Cooley's representation of Dr. Venter began

on or around May 31, 2018," that "Cooley did not represent JCVI when HLI filed the Federal Action on July 20, 2018," and that "JCVI engaged Cooley to represent JCVI in the Federal Action on or around July 23, 2018." *Id.* ¶ 6.

The evidence fails to establish that Cooley has actual knowledge of confidential information from the Wamberg Matter that is material to this matter. Whether the laptop, allegedly misappropriated by JCVI and Venter, contains such information has no bearing on Cooley's confidentiality obligations to HLI. *See Neal*, 123 Cal. Rptr. 2d at 212.

The evidence also fails to establish a substantial relationship between the Wamberg Matter and this matter, failing to justify a presumption of knowledge of confidential information, and failing to justify disqualification. Similar causes of action, and similar allegations of former employees obtaining and using HLI's trade secrets in violation of a PIIA, are not conclusive. *See Khani*, 155 Cal. Rptr. 3d at 356. The positions of the former HLI employees were different. The types of information each former employee allegedly misappropriated are different. The alleged methods of the former employees to obtain and use the information are different. HLI asserts that Cooley obtained confidential information related to HLI's technology, business, finances, and litigation and settlement strategy in the Wamberg Matter, but HLI fails to identify this information. *See Khani*, 155 Cal. Rptr. 3d at 536. HLI also fails to show how such information would be "directly in issue or of critical importance" in this matter. *See Farris*, 14 Cal. Rptr. 3d at 623. To the extent HLI seeks disqualification based on concurrent representation, the evidence fails to demonstrate concurrent representation.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the motion to disqualify is denied. (ECF No. 8).

Dated: November 8, 2018

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

10