UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMAN LONGEVITY, INC., <br> Plaintiff, <br> v. <br> J. CRAIG VENTER INSTITUTE, INC. and DOES 1-100, inclusive, <br> Defendants. | Case No.: 18cv1656-WQH-LL <br> **ORDER** |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss (ECF No. 23) and the Motion to File Documents Under Seal (ECF No. 34) filed by Defendant J. Craig Venter Institute, Inc.

**I.  BACKGROUND**

On July 20, 2018, Plaintiff Human Longevity, Inc. (Plaintiff HLI) initiated this action by filing a Complaint for Damages and Injunctive Relief against Defendant J. Craig Venter Institute, Inc. (Defendant JCVI) and doe defendants. (ECF No. 1). Plaintiff brings the following causes of action: (1) misappropriation of trade secrets pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq.; (2) conversion; (3) tortious

interference with contract; (4) tortious interference with prospective economic advantage; and (5) unfair business practices. *Id.* at 11–16

On August 3, 2018, the Court denied the motion for a temporary restraining order and the motion for an order to show cause why a preliminary injunction should not be issued filed by Plaintiff HLI. (ECF Nos. 6, 14).

On August 22, 2018, Defendant JCVI filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 23).

On September 10, 2018, Plaintiff HLI filed a Response in Opposition (ECF No. 31) to the Motion to Dismiss.

On September 17, 2018, Defendant JCVI filed a Reply (ECF No. 32) in support of the Motion to Dismiss.

On October 15, 2018, Defendant JCVI filed a Notice of Ruling (ECF No. 33), and a Motion to File Documents Under Seal (ECF No. 34).[1]

On November 8, 2018, the Court denied (ECF No. 41) the Motion to Disqualify Counsel filed by Plaintiff HLI (ECF No. 8).

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff HLI alleges that it "combines DNA sequencing and expert analysis with machine learning to help change medicine to a more data-driven science." (ECF No. 1 ¶ 6). Plaintiff HLI alleges that "[a]s part of its operations, HLI has developed the 'Health Nucleus,' which combines intelligence platform integrating genomics, advanced clinical imaging and machine learning to provide clients with whole body assessment of potential disease and health risks." *Id.* ¶ 7. Plaintiff HLI alleges that Defendant JCVI was founded in 1992 under a different name, and "touts itself as a world leader in genomic and

---

[1] Defendant JCVI moved the Court to seal an arbitration ruling "out of an abundance of caution given the Ruling was entered in a confidential arbitration between Dr. Venter and HLI." (ECF No. 34 at 3–4). Defendant stated, "Dr. Venter and JCVI do not believe the Ruling contains any confidential information, but JCVI respectfully submits that there is good cause to seal the Ruling if HLI believes sealing is required." *Id.* at 4. Plaintiff HLI does not request that the Court seal the ruling. *See* ECF No. 42. The Motion to File Documents Under Seal (ECF No. 34) is denied.

bioinformatics research." *Id.* ¶ 8. J. Craig Venter (Venter) has allegedly served as the Chairman and Executive Officer of JCVI and a member of the JCVI Board of Trustees at all relevant times in this matter. *Id.* ¶ 2. Plaintiff HLI alleges that Venter was CEO when HLI was founded in 2014. *Id.* ¶ 9.

In 2016, Venter allegedly signed an agreement to serve as HLI's Executive Chairman and a Proprietary Information and Inventions Agreement (PIIA). *Id.* ¶ 11. In the PIIA, Venter allegedly agreed that his inventions during employment, "along with all other confidential, 'business, technical, and financial information (including, without limitation, the identity of and information relating to customers or employees)' developed, learned or obtained by Venter during his employment, were considered 'Proprietary Information' and that he would not disclose such information." *Id.* ¶¶ 12–13. Plaintiff HLI alleges that "Venter agreed to return to HLI all items containing or embodying Proprietary Information" and agreed not to "encourage or solicit any employee of HLI to leave HLI for any reason" for one year after the term of his employment. *Id.* ¶¶ 14–15. Plaintiff HLI alleges,

> During his HLI employment, Venter used [an] HLI-owned computer and server to send e-mails to his JCVI account at jcventer@jcvi.org. . . . Venter would consistently use his jcventer@jcvi.org e-mail for HLI business, including communicating with employees, donors and vendors. In addition, Venter instructed HLI to forward his HLI e-mails at jcventer@humanlongevity.com to his JCVI email address thereby forwarding HLI proprietary and trade secret information directly to JCVI.

*Id.* ¶ 23.

Plaintiff HLI alleges that during his employment, Venter had access to trade secrets related to Health Nucleus, including "processes and data relating to HLI's development of its Health Nucleus" and "bi-weekly business development updates, leadership updates, executive summaries, and weekly reports of all Health Nucleus activities." *Id.* ¶ 16.

Plaintiff HLI alleges that during his employment, Venter had access to trade secrets related to HLI's ongoing business, including "identity and contact information [for]

financing or potential financing sources, including . . . high-net-worth individuals" and "negotiating terms and strategies for potential transactions." *Id.* Plaintiff HLI further alleges that such trade secrets include "[t]he identity and contact information of clients and potential client[s] . . . including . . . high-net-worth individuals such as Hollywood actors and actresses, corporate executives, NFL team owners, philanthropists and politicians"; "employee contact and compensation information"; "research data, studies, imaging, as well as client results and prognoses"; "HLI's-owned Lenovo laptop computer"; "internal financial reports on HLI's business operations and future forecasts"; audits and industry reports, "including analysis of market competitors"; and "plans, projections and negotiations regarding the potential expansion of [HLI's] business operations." *Id.* Plaintiff HLI alleges that "[t]he identification of investors who have the ability and the willingness to fund is the lifeblood of HLI. . . . HLI has expended considerable time and resources developing investor and customer lists with the identities and contact information of individuals who are interested in investing in or purchasing HLI's services." *Id.* ¶ 18.

In mid-May of 2018, Venter allegedly presented a one-sided, self-serving "rush investor deal" giving a new investor "rights that had already been granted to another party." *Id.* ¶ 28. On May 24, 2018, the HLI Board considered the deal, and "[a]t that point, the HLI Board voted to terminate Venter from HLI. They then communicated Venter's termination to him." *Id.* ¶ 28. The investor allegedly "pulled out of the HLI deal." *Id.* ¶ 32.

Following his termination, Venter allegedly "abruptly left the HLI corporate offices with his HLI-owned computer" and "immediately began using the HLI computer and server to communicate to the public [and] solicit HLI investors and employees" in order to "begin development of a program to directly compete with HLI's Health Nucleus." *Id.* ¶¶ 29, 35. Venter allegedly "used the HLI computer, accessed and sent . . . internal privileged communications involving Series C and Asia JV Series A Docs"; invited "an HLI Board member . . . to his home in Nantucket using the HLI computer"; emailed the potential investor from the failed May deal; and met "with as many as 9 HLI employees," one of

whom "resign[ed] from HLI to join JCVI." *Id.* ¶¶ 31–33.  Venter allegedly "[u]s[ed] the HLI-owned computer and server" to "sen[d] HLI trade secret and proprietary information as well as HLI internal communications to hired counsel." *Id.* ¶ 36.

Plaintiff HLI seeks general, special, and punitive damages, appropriate alternative statutory damages, disgorgement, injunctive relief, seizure of the laptop, legal costs, and interest and fees. *Id.* at 17.

## III. APPLICABLE STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quotation omitted).

Stating a claim for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A]ccepting all factual allegations in the complaint as true and drawing 'all reasonable inferences in favor of the nonmoving party,'" the plaintiff's "allegations must 'plausibly suggest an entitlement to relief.'" *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 886–87 (9th Cir. 2017) (first quoting *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); then quoting *Iqbal*, 556 U.S. at 681).

"The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). The plaintiff's explanation must instead be plausible, which requires alleging "facts tending to exclude the possibility" that the defendant's "alternative explanation is true." *Eclectic Props. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014)

("[E]stablishing only a 'possible' entitlement to relief . . . [does] not support further proceedings."); *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1105 (9th Cir. 2013) ("To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation.").

## IV. DISCUSSION

Defendant JCVI contends that the Complaint does not state a claim under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 et seq. (DTSA), because Plaintiff HLI fails to identify trade secrets with sufficient particularity. Defendant JCVI further contends Plaintiff HLI fails to adequately allege that Defendant JCVI improperly acquired, disclosed, or used any trade secrets.

Plaintiff HLI contends that the facts in the Complaint sufficiently allege a trade secret within the meaning of the DTSA. Plaintiff HLI asserts that "each of HLI's Trade Secret categories is sufficiently identified and pled." (ECF No. 31 at 10). Plaintiff HLI further contends that the Complaint adequately alleges misappropriation within the meaning of the DTSA. Plaintiff HLI asserts that Venter used the laptop and proprietary information after his employment to attempt to develop a program to compete with Health Nucleus.

The DTSA provides a civil cause of action for "the misappropriation of a trade secret." 18 U.S.C. § 1836(b)(1), (3). A trade secret is defined as:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through

proper means by, another person who can obtain economic value from the disclosure or use of the information.

§ 1839(3).[2] The alleged trade secret must be described with sufficient particularity to distinguish it from matters generally known in the trade or specially known to persons skilled in the trade, and to enable the defendant to ascertain the boundaries of the trade secret. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (stating particularity requirements for trade secret claims under California law); *see also Founder Starcoin, Inc. v. Launch Labs, Inc.*, No. 18cv972-JLS(MDD), 2018 WL 3343790, at *6 (S.D. Cal. July 9, 2018) ("[T]he definitions of trade secret and misappropriation are virtually the same in both the federal DTSA, 18 U.S.C. § 1839, and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1. Accordingly, federal district courts in California have applied California's trade secret case law to causes of action brought under the federal DTSA.") (citations omitted).

In *UCAR Tech. (USA) Inc. v. Yan Li*, the plaintiff adequately stated a DTSA trade secrets claim with allegations of "detailed proprietary data that [Plaintiff] collected from its network of more than 15,000 cars, which provided valuable insight into vehicle operation and usage; testing data for [Plaintiff's] applications; software and testing data related to autopiloted cars developed by [Plaintiff] and subsets of the data set usable for work on autopilot technology; [Plaintiff's] software developed to work with vehicle autopilot technology; [Plaintiff's] strategic business plans; and the R&D work being done . . . for [Plaintiff]." No. 5:17-cv-01704-EJD, 2017 WL 6405620, at *3 (N.D. Cal. Dec. 15, 2017). However, allegations of broad categories relating to business or technology are not

---

[2] The DTSA applies to "any misappropriation of a trade secret . . . for which any act occurs on or after the date of the enactment of this Act," May 11, 2016. Defend Trade Secrets Act of 2016, PL 114-153, May 11, 2016, 130 Stat. 376. Plaintiff HLI includes allegations of conduct before May 11, 2016. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2018 WL 2298500, at *4 (N.D. Cal. May 21, 2018) (concluding plaintiff failed to state a DTSA claim absent "facts to show what trade secrets each of those defendants disclosed, or any facts to show it is unlikely that the trade secrets used to create [defendant's] [technology] were disclosed before May 11, 2016").

adequate to support a trade secrets claim under the DTSA. *See, e.g.*, *Webpass Inc. v. Banth*, No. C14-02291HRL, 2014 WL 7206695, at *3 (N.D. Cal. Dec. 18, 2014); *Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017).

In this case, Plaintiff HLI alleges that its trade secrets "include, but are not limited to," "processes and data relating to HLI's development of its Health Nucleus." Plaintiff HLI describes Health Nucleus as a program that "combines intelligence platform integrating genomics, advanced clinical imaging and machine learning to provide clients with whole body assessment of potential disease and health risks." Plaintiff HLI alleges that its trade secrets include "bi-weekly business development updates, leadership updates, executive summaries, and weekly reports of all Health Nucleus activities." Plaintiff HLI's allegations of Health Nucleus technology and information are expansive and lack particularity. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (allegations of "design review templates," "fluidics design files," or "source code files" lacked particularity, especially when "preceded by the phrases 'such files included' and 'such as'"); *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. 16CV1549-LAB (BLM), 2017 WL 1198992, at *6 (S.D. Cal. Mar. 31, 2017) (concluding allegations of "methods and procedures for preparing clinical development plans to perform clinical studies," "methods and procedures in the design, performance, and data analysis of clinical studies," "methods and procedures for data management and analysis," and "database design, computer software, and procedures for implementing a database to manage and recruit volunteers for various clinical studies," lacked sufficient particularity); *Space Data*, 2017 WL 5013363, at *2 ("[A] high-level overview of Space Data's purported trade secrets, such as 'data on the environment in the stratosphere' and 'data on the propagation of radio signals from stratospheric balloon-based transceivers' . . . do[es] not satisfy the Rule 8 pleading requirements.").

Plaintiff HLI alleges that its trade secrets include "identity and contact information [for] financing or potential financing sources, including . . . high-net-worth individuals"

and "negotiating terms and strategies for potential transactions." Plaintiff HLI further alleges that its trade secrets include "[t]he identity and contact information of clients and potential client[s] . . . including . . . high-net-worth individuals such as Hollywood actors and actresses, corporate executives, NFL team owners, philanthropists and politicians"; "employee contact and compensation information"; "research data, studies, imaging, as well as client results and prognoses"; "HLI's-owned Lenovo laptop computer"; "internal financial reports on HLI's business operations and future forecasts"; audits and industry reports, "including analysis of market competitors"; and "plans, projections and negotiations regarding the potential expansion of [HLI's] business operations." Plaintiff HLI's allegations of ongoing business information lack particularity. *See Webpass*, 2014 WL 7206695, at *3 (concluding allegations of "network design and plans; its customer lists; customer pricing and financial information; marketing strategies; existing projects and proposals; and research and development strategies and related material" lacked sufficient particularity); *Jun-En Enter. v. Lin*, No. CV12-2734PSG(SSx), 2013 WL 12126115, at *2 (C.D. Cal. June 17, 2013) ("[M]erely pleading that the proprietary information relates to potential customers and business leads is insufficient."); *Becton*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) ("[T]he identification of a device . . . is not, without further elaboration, sufficient to identify what information thereon is alleged to constitute a trade secret."); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. July 6, 2016) ("[I]dentifying documents alone would not be an adequate substitution for detailed identification of the trade secrets therein.").

The Court concludes that Plaintiff HLI fails to allege facts giving rise to a plausible inference of the existence of a trade secret within the meaning of the DTSA.[3] Even if the Complaint adequately alleged a trade secret, the Complaint must also adequately allege

---

[3] The Court does not assess whether HLI's allegations are adequate to support inferences of reasonable measures to keep the information secret, independent economic value derived from the information not being generally known, or harm from the alleged misappropriation. *See* § 1839(3)(A), (B).

misappropriation within the meaning of the DTSA. Misappropriation can occur through "acquisition of a trade secret . . . by a person who knows or has reason to know that the trade secret was acquired by improper means." § 1839(5)(A). Misappropriation can also occur through "disclosure or use of a trade secret . . . by a person" who "used improper means to acquire knowledge of the trade secret," or by a person who "knew or had reason to know that the knowledge of the trade secret" was obtained improperly. § 1839(5)(B). Improper means, within the meaning of the DTSA, are "theft, bribery, misrepresentation, breach . . . of a duty to maintain secrecy, or espionage through electronic or other means." § 1839(6).

In this case, Plaintiff HLI claims improper acquisition by alleging that Venter and JCVI had access to HLI information during Venter's employment with HLI, and that Venter instructed HLI to forward his HLI emails to his JCVI email address. Plaintiff HLI further alleges that Venter signed a Proprietary Information and Inventions Agreement (PIIA) agreeing not to disclose confidential proprietary information. Plaintiff HLI further alleges that Venter accessed the laptop and HLI proprietary information after leaving his employment with HLI. The alleged facts are adequate to infer that HLI was aware of Venter's continuing employment at JCVI and his email forwarding. The alleged facts are adequate to infer that Venter had a duty not to disclose HLI information based on his PIIA. The alleged facts are not adequate to infer that Venter knew or knew or should have known which HLI information was improper for him to forward. *See Call One, Inc. v. Anzine*, No. 18 C 124, 2018 WL 2735089, at *8 n.8 (N.D. Ill. June 7, 2018). The alleged facts are not adequate to infer that Defendant JCVI or Venter improperly acquired new or different information after Venter left his employment with HLI. *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S. D. Cal. 2012) (claiming that a defendant possessed, acquired, or had access to trade secrets did not adequately allege trade secret misappropriation under California law).

Plaintiff HLI claims improper disclosure by alleging that Venter disclosed internal "communications involving Series C and Asia JV Series A Docs." The nature of the

alleged disclosures is unclear.  The nature of the alleged communications involving Series C and Asia JC Series A Docs is unclear.  These allegations are inadequate to support the inference that Defendant JCVI or Venter improperly disclosed information within the meaning of the DTSA.  *See also UCAR*, 2017 WL 6405620, at *3 (alleging that a defendant "cannot separate out [Plaintiff's] trade secrets and confidential information in starting a competing company in the exact technology space that [Defendant] worked in for [Plaintiff]" impermissibly relies on a theory of "inevitable disclosure").

Plaintiff HLI claims improper use by alleging that Venter used the laptop and proprietary information in his communications with counsel, in soliciting investors and employees, and in beginning development of a program to compete with Health Nucleus.  These allegations are inadequate to support the inference that Defendant JCVI or Venter improperly used information within the meaning of the DTSA.  *See Call One*, 2018 WL 2735089, at *8 n.8 ("The suggestion that providing a document to one's attorney after learning of a lawsuit somehow constitutes trade secret misappropriation is patently ridiculous."); *see also Pellerin*, 877 F. Supp. 2d at 989 ("[A] party cannot prove trade secret misappropriation by demonstrating that a former employee's new employment will inevitably lead the former employee to rely on the former employer's trade secrets."). *Compare Space Data*, 2017 WL 5013363, at *2 (failing to support an inference of improper use with conclusory allegations that "Defendants have engaged in other business activity based on [Plaintiff's] confidential trade secret information, which conflict with their legal obligations to [Plaintiff]"), *with Becton*, 2018 WL 2298500, at *4 (supporting a theory of improper use with allegations that the defendant, "which had never previously produced a cytometer, launched . . . two cytometers, one bearing 'striking similarities' to a cytometer" that former employees developed while working for the plaintiff).

The Court concludes that Plaintiff HLI fails to allege facts giving rise to a plausible inference of misappropriation within the meaning of the DTSA.  "[A]ccepting all factual allegations in the complaint as true and drawing 'all reasonable inferences in favor of'"

Plaintiff HLI, the facts alleged do not "plausibly suggest an entitlement to relief" pursuant to the DTSA. *See Gregg*, 870 F.3d at 886–87.

## V. SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS

Defendant JCVI moves the Court to decline to exercise supplemental jurisdiction over the state law causes of action for conversion, tortious interference with contract, tortious interference with prospective economic advantage, and unfair business practices. Plaintiff HLI asserts that this Court properly has federal question jurisdiction based on the DTSA. (ECF No. 1 ¶ 4). Plaintiff HLI contends that the Court should exercise supplemental jurisdiction over the state law claims to promote judicial economy and fairness, and to avoid prejudice and delayed relief to Plaintiff HLI.

The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim," if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

Having dismissed the only federal claim asserted by Plaintiff HLI, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478 & n.12 (9th Cir. 1998) (upholding district court declining to exercise supplemental jurisdiction and requiring no further explanation by district courts acting in accordance with 28 U.S.C. § 1367(c)(3)); *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion.") (quoting *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007)).

## VI. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 23) is GRANTED. Any motions to file an amended complaint shall be filed within thirty (30) days of the date of this Order in accordance with Local Rule 7.1.

IT IS FURTHER ORDERED that the Motion to File Documents Under Seal (ECF No. 34) is DENIED.

Dated: December 18, 2018

Hon. William Q. Hayes
United States District Court